UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY ) <br> COMMISSION, ) <br> ) <br>          Plaintiff, ) <br> ) <br> v. ) <br> ) <br> FRED FULLER OIL COMPANY, INC., ) <br> ) <br>          Defendant ) <br> _____) | Civil Action No. 1:13-cv-295 <br><br> COMPLAINT AND JURY TRIAL <br> DEMAND |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII") and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of sex and retaliation by Fred Fuller Oil Company, Inc. (hereafter "Defendant"), and to make whole Nichole Wilkins and Beverly Mulcahey (hereafter referred to collectively as "Charging Parties"), who were harmed by Defendant's discriminatory practices. As alleged in greater detail in paragraphs 7 through 11 below, Defendant subjected Charging Parties to sex discrimination by creating and failing to remedy a hostile work environment on the basis of sex, by constructively discharging Wilkins, and discharging Mulcahey in retaliation for Wilkins's complaint of discrimination.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-5(f)(1) and (3).

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of New Hampshire.

1

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission ("EEOC" or the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. §2000e-5(f)(1) and (3).

4. At all relevant times, Defendant has continuously been a New Hampshire corporation doing business in New Hampshire and has continuously had at least 15 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## STATEMENT OF CLAIMS

6. More than thirty days prior to the institution of this lawsuit, Charging Parties each filed a charge with the Commission alleging violations of Title VII by Defendant. All conditions precedent to the institution of this lawsuit have been fulfilled.

7. Since at least 2001, Defendant, through its owner Fred Fuller ("Fuller") engaged in unlawful employment practices in violation of Section 703 (a) of Title VII, 42 U.S.C. §2000e-(a) and (b). These practices, which concerned sexual harassment and retaliation, were detailed in the Complaint, Amended Complaint, and summary judgment opposition papers filed with this Court in Civil Action No. 03-cv-426-B, which was resolved by a consent decree approved by this Court on July 1, 2005.

8. Since at least 2006, Defendant, through Fuller, its owner, has continued to engage in unlawful employment practices in violation of Section 703 (a) of Title VII, 42 U.S.C. §2000e-

(a) and (b), including, but not limited to, the practices described in paragraphs 9 through 11.

9. Charging Party Wilkins worked at Defendant's Hudson, New Hampshire location. Fuller subjected Wilkins to offensive, unwelcome, sexual conduct including, but not limited to, touching of breasts, other unwanted touching, sexually explicit language and gestures, demands for sexual favors, demeaning language, and other conduct, which created a sexually hostile work environment. Examples include, but are not limited to the following:

    a. Fuller asked Wilkins if she would like to earn some extra money by stripping for his son's bachelor party.

    b. When Wilkins was a tenant in one of Fuller's apartments, he told her that he would have a friend install cameras in the apartment so that he could keep an eye on her.

    c. Fuller habitually commented on the appearance and dress of female employees and once commented on how great a co-worker's ass looked.

    d. Beginning in the winter of 2010, Fuller began making comments about Wilkins's clothing. These comments included statements that she needed to wear more shirts that showed her breasts, that she needed to wear more revealing clothing, and that the only good thing about the company t-shirts that Wilkins wore was that his name was on her breasts. Fuller also looked down Wilkins's shirt whenever possible, making comments like, "the ladies look nice today," referring to Wilkins's breasts. Not only did Fuller refer to Wilkins's breasts as "the ladies," but he also referred to them as "the girls," "those things," and "your tits."

    e. Other inappropriate comments by Fuller in late 2010 and early 2011 included, but were not limited to, the following:

      i. Telling Wilkins that a female co-worker was "on the prowl" depending on what the co-worker was wearing.

      ii. Once telling Wilkins that the next time her co-worker was on vacation, Wilkins would have to let Fuller "play with [her] boobs."

      iii. Talking about collecting night crawlers when he was a child and that he would show Wilkins his "night crawler," referring to his penis.

      iv. Telling Wilkins that he had the best view of the office when she walked by.

      v. Asking Wilkins to laugh so he could watch her breasts bounce up and down.

      vi. After the birth of his grandson, telling Wilkins that the baby had been circumcised and that neither Fuller nor his son had been circumcised.

f. Toward the end of 2010, Fuller began to engage in unwanted and inappropriate touching of Wilkins. The touching occurred without witnesses and included, but was not limited to, the following:

      i. On at least three occasions, Fuller took his fingers and jiggled Wilkins' breasts from the opening in the v-neck of her blouse.

      ii. Frequently, Fuller, while grabbing something off Wilkins's desk, would brush his hands across her breasts.

g. In or around March 2011, after Wilkins returned from a vacation, Fuller approached her from behind her desk and put his hands on her breasts and rubbed them.

h. On or about July 11, 2011, Fuller came to Wilkins's desk, stood behind her,

cupped both his hands over her breasts inside her shirt and squeezed. Wilkins hunched over and pushed her back up to try to get his hands off her breasts, but Fuller pressed her chair against the desk to prevent her from moving. Fuller squeezed harder with his fingers on her nipples until they became erect. While doing this, Fuller whispered in her ear that when her co-worker left on vacation, "we are definitely taking these guys out to play with." Fuller moaned and commented how it did not take long for her nipples to become erect and that she must really want it. Fuller then jiggled her breasts up and down and backed away. Fuller then pointed to his penis inside his pants and said, "He's so bad, getting hard." Wilkins was so upset, she got up from her desk and grabbed her purse on the floor next to her, at which point Fuller whispered, "You have really nice tits and you were great, nice and hard fast." After this incident, Wilkins told her female co-worker, who was in the separate dispatch room and to whom she had previously reported harassment by Fuller, what had happened in detail. Although Wilkins broke down in tears in front of her co-worker, her co-worker's response was, "Well, you can't tell anyone. You need your job."

10. Because of this sexual assault and the prior unwelcome harassment, Wilkins became fearful of Fuller and of going to work. As a result, she resigned the next day, telling Defendant's Benefits Administrator/Accountant, "Fred knows why and he knows what he did." Within five minutes, Fuller left a message on Wilkins's cell phone saying, "We need to talk." On or about July 17, 2011, Fuller sent Wilkins an e-mail apologizing for upsetting her and telling her that "it should not of [sic] happened."

11. Wilkins pressed criminal charges against Fuller. On April 19, 2012, Fuller was

arrested for forcibly fondling Wilkins, a Class A misdemeanor sexual assault.  Fuller entered a plea of no contest to a reduced charge of simple assault on November 14. 2012.

      12.      Charging Party Mulcahey worked at the Hudson, New Hampshire location. Fuller subjected Mulcahey to offensive, unwelcome, sexual conduct, including, but not limited to, the following:

      a.      Grabbing his crotch area and asking her "What can you do for me?" in response to Mulcahey's request for time off; cornering her in the kitchen and telling her in a disturbing manner that she looked very nice; cornering her by the copy machine in an inappropriately close manner and telling her in an inappropriately suggestive tone that she looked very nice today; commenting on her appearance, telling her that she was showing off the right amount of cleavage, not too much and not too little; and making sexually suggestive comments regarding a play date between her, Wilkins and Wilkins's young daughter: Fuller stated that he would like the three of them to get together with him.

      b.      As Fuller's sexual harassment of Wilkins increased, Wilkins told Mulcahey about the harassment.

      c.      Mulcahey witnessed Fuller hugging women alone in the kitchen and also generally constantly flirting with her female co-workers.

      c.      Fuller played sexual favorites with Mulcahey's female co-workers, which led them to shirk their work without consequence and left Mulcahey to pick up all the slack. She repeatedly complained to her managers about these women not doing their work and being over-burdened because of it and was told that there was nothing they could do

because Fuller liked the women.

13.    Shortly after Wilkins notified Defendant of her intent to file a charge of discrimination alleging sexual harassment against Fuller, Defendant fired Mulcahey because of Mulcahey's close association with Wilkins in retaliation, as follows:

a.    Prior to working for Defendant, Wilkins and Mulcahey had worked together at another heating oil supplier.  They developed a very close friendship, of which Fuller became aware.  After Wilkins was hired by Defendant, Wilkins recommended that Fuller hire Mulcahey, and brought him her resume.  On her desk at work, Mulcahey displayed Birthday and Mother's Day cards from Wilkins, pictures of Wilkins's young daughter, and a picture of Mulcahey and Wilkins together.  Fuller knew that Wilkins and Mulcahey often spent time talking together, and that the two saw each other socially outside of work.  Immediately after Wilkins's constructive discharge, Fuller often asked Mulcahey if she had heard from Wilkins and asked her for Wilkins's email address.  A few weeks after Wilkins was constructively discharged, however, when it became obvious to Fuller that Wilkins was not returning, Fuller became cold to Mulcahey and would often pass her without acknowledging her.

b.    On or about October 18, 2011, Wilkins's attorney sent a letter to Fuller regarding Wilkins's plans to file a charge of discrimination and included a signed copy of the charge. Wilkins informed Fuller that she would proceed with filing the charge with the New Hampshire Commission for Human Rights and the EEOC if Fuller failed to respond by November 6, 2011. Fuller received this notice via certified mail on or about October 19.

c.    On or about November 10, 2011, Mulcahey, who had worked for Defendant since September 2006, was told by Billy Fuller (Fred Fuller's son) that she was being terminated

because "it was not working out." He told her that her performance was poor because she was not making enough phone calls. He said it was Fuller's decision to terminate her. This reason was pretextual, as Mulcahey was performing well, as she always had. When Mulcahey angrily said, "This is because of Nicky [Nichole]!," Billy Fuller did not reply. Rather, Defendant terminated Mulcahey's employment in retaliation for Wilkins's pursuing her claim of discrimination.

14. Defendant's practices complained of in paragraphs 7 though 13 above deprived Charging Parties of equal employment opportunities and otherwise adversely affected their employment because of their sex and their opposition to discrimination on the basis of sex.

15. Defendant's unlawful employment practices complained of in paragraphs 7 through 13 above were intentional.

16. Defendant's unlawful employment practices complained of in paragraphs 7 though 13 were done with malice or with reckless indifference to the federally protected rights of Charging Parties.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, Fred Fuller, its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practices which discriminate on the basis of sex or retaliate against individuals in violation of Title VII;

B.   Order Defendant to institute and carry out policies, practices and programs which provide equal employment opportunities for employees, and which eradicate the effects of Defendant's past and present unlawful employment practices, including training of all employees and counseling and treatment of Fred Fuller;

C.   Order Defendant to make whole Wilkins and Mulcahey by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendant's unlawful employment practices;

D.   Order Defendant to make whole Wilkins and Mulcahey by providing compensation for non-pecuniary losses, including pain, suffering, and humiliation in amounts to be determined at trial;

E.   Order Defendant to pay Wilkins and Mulcahey compensation for past and future pecuniary losses in amounts to be determined at trial.

F.   Order Defendant to pay Wilkins and Mulcahey punitive damages for its malicious and/or reckless conduct in amounts to be determined at trial.

G.   Grant such further relief as the Court deems necessary and proper.

H.   Award the Commission its costs in this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Dated: June 28, 2013

            Respectfully submitted,
            P. David Lopez
            General Counsel

            James L. Lee
            Deputy General Counsel

        Gwendolyn Y. Reams
        Associate General Counsel

        /s/Elizabeth Grossman_____
        Elizabeth Grossman
        Regional Attorney
        elizabeth.grossman@eeoc.gov

        /s/Robert D. Rose_____
        Robert D. Rose
        Supervisory Trial Attorney
        Robert.rose@eeoc.gov

        /s/Markus L. Penzel_____
        Markus L. Penzel
        Senior Trial Attorney
        EQUAL EMPLOYMENT OPPORTUNITY
                COMMISSION
        Boston Area Office
        John F. Kennedy Federal Building
        Room 475
        Boston, MA 02203-0506
        (617) 565-3193
        markus.penzel@eeoc