```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW HAMPSHIRE
```

Equal Employment Opportunity
Commission

    v.                                          Civil No. 13-cv-295-PB
                                               Opinion No. 2014 DNH 020

Fred Fuller Oil Company, Inc., et al.


## MEMORANDUM AND ORDER

The Equal Employment Opportunity Commission (EEOC) sued Fred Fuller Oil Company, Inc. on behalf of two former employees, Nichole Wilkins and Beverly Mulcahey. The complaint alleges that Fred Fuller, the owner of Fuller Oil, sexually harassed both women. It also charges that the company fired Mulcahey in retaliation for her close friend, Wilkins, complaining about the harassment she had suffered prior to her constructive discharge. Fuller Oil has filed a motion for partial judgment on the pleadings, challenging only Mulcahey's claims. It argues that Mulcahey's sexual harassment claim is deficient because the harassment she allegedly suffered was neither severe nor pervasive. It challenges her retaliation claim by arguing that Mulcahey's alleged relationship with Wilkins is not sufficiently

close to support a retaliation claim based on Wilkins's sexual harassment complaint. I reject both arguments.

## I. BACKGROUND[1]

### A. Wilkins's Allegations

Wilkins alleges that Fred Fuller subjected her to offensive sexual conduct and unwelcome sexual comments on multiple occasions during the time she worked for Fuller Oil. For example, Fuller asked Wilkins if she would strip for his son's bachelor party. When Wilkins was a tenant in an apartment owned by Fuller, he told her he was installing cameras in her apartment "to keep an eye on her." In 2010, Fuller also began requesting that Wilkins wear more revealing clothing, including shirts that showed off her breasts. Fuller told Wilkins that the "only good thing about the company t-shirts" was that they allowed his name to be on her breasts. Fuller looked down Wilkins's shirt whenever possible and commented on her breasts, referring to them by various vulgar nicknames. Fuller told Wilkins that she would have to let Fuller "play with [her]

---

[1] Unless otherwise specified, all facts are taken from the EEOC's complaint. Doc. No. 1.

boobs" the next time that her co-worker went on vacation, and that he would show her his "night crawler."  He also requested that she laugh "so he could watch her breasts bounce up and down," and he told Wilkins that neither he nor his son – who also worked for the company – had been circumcised.  Fuller's offensive remarks were not limited to Wilkins.  Fuller habitually commented on female employees' appearance, once commenting to Wilkins about "how great a co-worker's ass looked."  He also remarked that female colleagues were "on the prowl" depending on how they dressed.

In the final months of 2010, Fuller's actions toward Wilkins progressed to unwanted and inappropriate touching, which always occurred without witnesses present.  On at least three occasions, he put his fingers inside Wilkins's blouse and touched her breasts.  He would also frequently brush his hands against her breasts while grabbing objects from her desk.  In March 2011, Fuller approached Wilkins from behind her desk and put his hands on her breasts, rubbing them.

On July 11, 2011, Wilkins alleges the following:

> Fuller came to Wilkins's desk, stood behind her, cupped both his hands over her breasts inside her shirt and squeezed.  Wilkins hunched over and pushed her back up to try to get his hands off her breasts, but Fuller pressed her chair against the desk to

3

> prevent her from moving.  Fuller squeezed harder with
> his fingers on her nipples until they became erect.
> While doing this, Fuller whispered in her ear that
> when her co-worker left on vacation, "we are
> definitely taking these guys out to play with."
> Fuller moaned and commented how it did not take long
> for her nipples to become erect and that she must
> really want it.  Fuller then jiggled her breasts up
> and down and backed away.  Fuller then pointed to his
> penis inside his pants and said, "He's so bad, getting
> hard."  Wilkins was so upset, she got up from her desk
> and grabbed her purse on the floor next to her, at
> which point Fuller whispered, "You have really nice
> tits and you were great, nice and hard fast."

In tears, Wilkins reported the incident to a female co-worker to whom she had previously reported other instances of Fuller's harassment.  The co-worker responded "well, you can't tell anyone.  You need your job."  Fuller's harassment made Wilkins fearful of going to work, and she resigned the next day, explaining her resignation to a Fuller Oil employee by saying, "Fred knows why and he knows what he did."

Five minutes after Wilkins resigned, Fuller left a message on her cell phone saying "we need to talk."  On July 17, 2011, Fuller sent Wilkins an apologetic email stating, in part, "it should not of [sic] happened."  Wilkins pressed criminal charges based on the incident and on April 19, 2012, Fuller was arrested for forcibly fondling Wilkins, a misdemeanor sexual assault.  On November 14, 2012, Fuller entered a no contest plea to a reduced

charge of simple assault.

**B.    Mulcahey's Allegations**

Mulcahey was also employed at Fuller Oil, where she had worked since September 2006.  Mulcahey alleges her own unwelcome interactions with Fred Fuller.  For example, when Mulcahey once requested time off, Fuller grabbed his crotch and asked "[w]hat can you do for me?"  He also cornered her in the kitchen and told her "she looked very nice" in a disturbing manner, and similarly cornered her by the copy machine "in an inappropriately close manner" and suggestively told her that she looked nice.  Fuller also commented to Mulcahey that she was "showing off the right amount of cleavage, not too much and not too little."  Finally, he made sexually suggestive comments to Mulcahey regarding a "play date" between himself, Mulcahey, Wilkins, and Wilkins's young daughter.

Mulcahey notes other behavior on the part of Fuller that was not specifically directed at her but contributed to her discomfort in the workplace.  Wilkins told her of the sexual harassment that she was forced to endure and Mulcahey also witnessed Fuller hugging women alone in the kitchen and generally flirting with female co-workers.  When Mulcahey complained that she was being forced to carry a disparate amount

of the workload because of sexual favoritism, her complaints fell on deaf ears, as managers explained to her that "Fuller liked the women."

C.   **Relationship Between Mulcahey and Wilkins**

The complaint alleges that Wilkins and Mulcahey had a "very close friendship." Prior to their employment at Fuller Oil, Wilkins and Mulcahey had worked together for a different heating oil supplier. When Wilkins was hired by Fuller Oil, she recommended to Fuller that he hire Mulcahey and gave him her resume. Mulcahey's desk was adorned with birthday and mother's day cards from Wilkins, as well as a picture of Wilkins and Mulcahey together and a picture of Wilkins's young daughter. Wilkins and Mulcahey often spent time talking together at work and saw each other socially outside of work.

The complaint further alleges that Fuller was aware of the close friendship between the two women. Not only did Mulcahey display tokens of their relationship on her desk, but Fuller's request for a "play date" indicated that he knew the women likely spent time together outside of the office. Beginning immediately after Wilkins resigned, Fuller frequently asked Mulcahey if she had heard from Wilkins. He also asked Mulcahey for Wilkins's personal email address. Once it became obvious

6

that Wilkins was not returning to Fuller Oil, however, Fuller became cold to Mulcahey and would often refuse to acknowledge her.

**D.    Wilkins's EEOC Complaint and Mulcahey's Termination**

On October 18, 2011, Wilkins's attorney sent Fuller Oil a letter notifying the company of her plan to file a discrimination charge with the New Hampshire Commission for Human Rights and the EEOC.  The letter included a signed copy of the proposed filing and stated that Wilkins would file the charge unless Fuller responded – presumably with a settlement offer - by November 6, 2011.

On November 10, 2011, Billy Fuller – Fred Fuller's son – terminated Mulcahey, explaining that "it was not working out," that her performance was poor "because she was not making enough phone calls," and that Fred Fuller had made the final decision. At the time of her termination Mulcahey claims to have been "performing well, as she always had."  When notified of her termination, Mulcahey angrily said "[t]his is because of Nic[hole]!" – an allegation to which Billy Fuller did not respond.

## II. STANDARD OF REVIEW

"The standard for evaluating a Rule 12(c) motion for judgment on the pleadings is essentially the same as that for deciding a Rule 12(b)(6) motion." Pasdon v. City of Peabody, 417 F.3d 225, 226 (1st Cir. 2005). The plaintiff must make factual allegations sufficient to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible when it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted). In deciding such a motion, the court views the facts contained in the pleadings in the light most favorable to the non-movant and draws all reasonable inferences in his or her favor. Zipperer v. Raytheon Co., Inc., 493 F.3d 50, 53 (1st Cir. 2007). "Judgment on the pleadings is proper 'only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment.'" Id. (quoting

8

Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54 (1st Cir. 2006)). Put another way, "[t]he motion for a judgment on the pleadings only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 (Civil 3d ed. 2004).

### III. ANALYSIS

Fuller Oil argues that the EEOC has not sufficiently pleaded hostile work environment and retaliation claims on Mulcahey's behalf. I address each claim in turn.

**A. Hostile Work Environment**

Title VII hostile work environment claims provide a cause of action for employer conduct "so severe or pervasive that it create[s] a work environment abusive to employees." Harris v. Forklift Sys., Inc., 510 U.S. 17, 22 (1993). To succeed on such a claim, a plaintiff must show (1) membership in a protected class; (2) subjection to unwelcome conduct; (3) conduct that is based on membership in the protected class; (4) conduct that is sufficiently severe or pervasive so as to alter the terms and conditions of the plaintiff's employment; (5) conduct that is

9

both objectively and subjectively offensive; and (6) a basis for employer liability.  Medina-Rivera v. MVM, Inc., 713 F.3d 132, 136 n.2 (1st Cir. 2013).

    Fuller Oil argues that the pleadings do not sufficiently allege that she was a victim of severe or pervasive harassment. Although Mulcahey was employed by Fuller Oil for six years, the company charges, she has identified only six comments that were addressed to her, none of which involved physical contact or threats of physical harm.  At most, it claims, these comments included only a single crude gesture - the crotch grab - amid other statements and actions that could not be considered objectively offensive.  I disagree.

    A court must examine allegations of sexual harassment "in light of the record as a whole and the totality of the circumstances."  O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001) (citing Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 69 (1986)).  Although the relevant test lacks "mathematical[ ] precis[ion]," courts should examine the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Billings v. Town of Grafton, 515

F.3d 39, 48 (1st Cir. 2008) (quoting Harris, 510 U.S. at 23). Courts "are by no means limited to [these factors], and 'no single factor is required.'"  Id. (quoting Harris, 510 U.S. at 23).

The First Circuit has determined that "[e]vidence of the harassment of third parties can help to prove a legally cognizable claim of a hostile environment." Hernandez-Loring v. Universidad Metropolitana, 233 F.3d 49, 55 n.4 (1st Cir. 2000); see also Cummings v. Standard Register Co., 265 F.3d 56, 63 (1st Cir. 2001).  Other circuits also recognize that a court may consider "similar acts of harassment of which a plaintiff becomes aware during the course of his or her employment, even if the harassing acts were directed at others or occurred outside of the plaintiff's presence." Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 336 (6th Cir. 2008); Schwapp v. Town of Avon, 118 F.3d 106, 111-12 (2d Cir. 1997).  See also Jerome R. Watson & Richard W. Warren, "I Heard It Through the Grapevine": Evidentiary Challenges in Racially Hostile Work Environment Litigation, 19 Lab. Law. 381, 407-13 (2004). Evidence of widespread sexual favoritism can also contribute to a hostile work environment.  1 Barbara T. Lindeman, et al., Employment Discrimination Law § 20.II.B.5.b (5th ed. 2012)

11

(explaining that such conduct "sends a message that 'engaging in sexual conduct' or 'sexual solicitations' is required for one gender to advance in the workplace."). Finally, although the harassment must be sufficiently severe or pervasive to alter the terms and conditions of employment, a claimant need not allege that the harassment made her unable to complete her work. See Gerald v. Univ. of P.R., 707 F.3d 7, 18 (1st Cir. 2013); Perez-Cordero v. Wal-Mart P.R., Inc., 656 F.3d 19, 30 (1st Cir. 2011) ("[w]e have never required an employee to falter under the weight of an abusive work environment before his or her claim becomes actionable.").

In the present case, the EEOC has alleged that Mulcahey was forced to endure multiple sexually charged comments from Fuller, that she witnessed Fuller hugging and flirting with female co-workers on multiple occasions, that she was forced to do a disproportionate amount of the work because of an environment of sexual favoritism, and that she knew of Fuller's repeated sexual harassment of Wilkins. When these allegations are viewed together, they are more than sufficient to plead a viable claim that Mulcahey was sexually harassed.

B.  **Retaliation**

Fuller Oil also argues that the EEOC's retaliation claim

seeks to extend an unsettled jurisprudence beyond reason. A traditional Title VII retaliation claim requires a plaintiff to prove that (1) he or she undertook protected conduct; (2) his or her employer took adverse action against them; and (3) a causal nexus exists between the protected conduct and the adverse action. Medina-Rivera, 713 F.3d at 139.

Mulcahey does not claim to have engaged in protected conduct prior to her termination. Rather, she asserts that her close friend Wilkins engaged in protected conduct by threatening to file, and then filing, an EEOC complaint, and that Fuller Oil terminated Mulcahey in retaliation for Wilkins having done so. The viability of Mulcahey's claim thus rests on her relationship with Wilkins, a third party.

The Supreme Court recently addressed so-called third party retaliation claims at length in Thompson v. N. Am. Stainless, LP, 131 S.Ct. 863 (2011). In Thompson, the petitioner and his fiancée both worked for respondent NAS. NAS fired the petitioner three weeks after his fiancée filed a formal complaint of harassment, and the petitioner then filed a complaint alleging third party retaliation. Id. at 867. The Court upheld his claim, reasoning that Title VII retaliation claims cover "a broad range of employer conduct," prohibiting

"any employer action that 'might well have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Id. at 868 (citing Burlington N. & S.F. Ry. Co. v. White, 548 U.S. 53, 68 (2006)).

Keying in on the logic underpinning Burlington Northern, the Court found it "obvious" that a "reasonable worker might be dissuaded from engaging in protected activity" if she knew that her fiancé would be fired. The Court acknowledged potential line-drawing difficulties in less clear cases, but "decline[d] to identify a fixed class of relationships for which third-party reprisals are unlawful." Id. As guidance, it advised that "firing a close family member" will almost always meet the Burlington standard, but that "inflicting a milder reprisal on a mere acquaintance" will almost never do so. Id. Beyond that, the Court expressed "reluctan[ce] to generalize," explaining that "Title VII's antiretaliation provision is simply not reducible to a comprehensive set of clear rules." Id. Rather, "the significance of any given act of retaliation will often depend upon the particular circumstances." Id. (quoting Burlington Northern, 548 U.S. at 69).

Focusing its argument on Thompson, Fuller Oil argues that Mulcahey and Wilkins are not close family members, nor is their

relationship "sufficiently close so that the termination, or threatened termination . . . 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  Doc. No. 7-1.  I reject this argument on the ground that it is premature.

   The complaint alleges that Mulcahey was a close friend of Wilkins, the individual who engaged in the protected conduct.  The two women worked together at a prior company, and Wilkins was influential in procuring Mulcahey's job with Fuller Oil.  On Mulcahey's desk at work she displayed birthday and mother's day cards from Wilkins alongside pictures of Wilkins's daughter and the two women together.  The complaint also alleges that Fred Fuller knew of this close friendship.  Fuller knew that the two women spoke frequently and spent time together out of work – as demonstrated by his statement about setting up a "play date" with the two women and Wilkins's daughter.  When Fuller wanted to contact Wilkins, he asked Mulcahey about her whereabouts and requested her personal email address from Mulcahey.  This relationship, as pled, exists somewhere in the fact-specific gray area between close friend and casual acquaintance.  Although I could not say that such a friendship definitively supports a successful claim, I also cannot say as a matter of

law that it does not.  I may revisit this issue upon a proper motion after discovery.  See Lard v. Ala. Alcoholic Beverage Control Bd., No. 2:12-cv-452-WHA, 2012 WL 5966617, at *4 (M.D. Ala. Nov. 28, 2012).

Fuller Oil argues in the alternative that the retaliation claim is defective because it fails to allege any facts beyond "sheer speculation" to support a causal relationship between Wilkins's protected conduct and Mulcahey's termination.  Recent precedent affirms that retaliation claims must be proven according to principles of but-for causation, Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S.Ct. 2517, 2533 (2013), but the EEOC's allegations of close temporal proximity – a matter of weeks - between Wilkins's threat of filing a complaint and Fuller Oil's decision to fire Mulcahey, when viewed together with the other evidence identified in the complaint, is sufficient to allow this claim to survive a motion for judgment on the pleadings. See, e.g., Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 25-26 (1st Cir. 2004) (a one month interval can provide sufficient temporal proximity to establish a prima facie case of retaliation).

## IV.  CONCLUSION

For the reasons discussed above, I deny Fuller Oil's motion for judgment on the pleadings.  Doc. No. 7.


SO ORDERED.

> /s/Paul Barbadoro
> Paul Barbadoro
> United States District Judge

January 31, 2014

cc:  Elizabeth A. Grossman, Esq.
     Robert D. Rose, Esq.
     Markus L. Penzel, Esq.
     Leslie H. Johnson, Esq.
     Martha Van Oot, Esq.
     K. Joshua Scott, Esq.